910 F.2d 159
 20 Envtl. L. Rep. 21,429
 HICKORY NEIGHBORHOOD DEFENSE LEAGUE, Plaintiff-Appellant,
v.
Samuel K. SKINNER, Secretary of Transportation; Thomas J.
Harrelson; George E. Wells; Thomas D. Larson,
Defendants-Appellees,
National Trust for Historic Preservation in the United
States, Amicus Curiae.
 No. 90-2641.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 6, 1990.
Decided Aug. 8, 1990.
Rehearing and Rehearing In Banc Denied
Aug. 21, 1990.
 
 Mary V. Carrigan, argued (Michael S. Scofield, Charlotte, N.C., on brief), for plaintiff-appellant.
 Elizabeth S. Merritt, argued (David A. Doheny, Vice President and General Counsel, Andreea C. Ferster, Asst. General Counsel, Nat. Trust for Historic Preservation in the U.S., Washington, D.C., on brief), for amicus curiae.
 Jacques B. Gelin, Land & Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., argued (Richard B. Stewart, Asst. Atty. Gen., Anne S. Almy, Robert L. Klarquist, Land & Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., Thomas J. Ashcraft, U.S. Atty., Clifford C. Marshall, Asst. U.S. Atty., Asheville, N.C., James B. Richmond, Sp. Deputy Atty. Gen., North Carolina Dept. of Justice, Raleigh, N.C., James E. Scapellato, Regional Counsel, Federal Highway Admin., Atlanta, Ga., L. Harold Aikens, Jr., Virginia I. Cherwek, Office of Chief Counsel, Federal Highway Admin., Washington, D.C., on brief), for defendants-appellees.
 Before PHILLIPS, SPROUSE, and WILKINS, Circuit Judges.
 WILKINS, Circuit Judge:
 
 
 1
 Hickory Neighborhood Defense League appeals the order of the district court on remand from our decision in Hickory Neighborhood Defense League v. Skinner, 893 F.2d 58 (4th Cir.1990) (Hickory Neighborhood I ). We affirm.
 
 I.
 
 2
 The genesis of this litigation was a proposal by the North Carolina Department of Transportation (NCDOT) to widen a portion of N.C. Highway 127 in Hickory, North Carolina. Approximately three blocks of the proposed widening will occur in the Claremont Historic District. The history of this project is set forth in our prior opinion and need not be repeated in detail. See id. at 59-60.
 
 
 3
 Because the proposed project would use land on which an historic site is located, defendants prepared an evaluation of the project as required by section 4(f) of the Department of Transportation Act of 1976, 49 U.S.C.A. Sec. 303 (West 1990), and section 18(a) of the Federal-Aid Highway Act, 23 U.S.C.A. Sec. 138 (West Supp.1990) (collectively "section 4(f)").[1] The section 4(f) evaluation considered the following alternatives:
 
 Alternative 1--widening N.C. Highway 127
 
 4
 Alternative 2A--one way pair--127 and N. Center Street
 
 
 5
 Alternative 2B--one way pair--127 and 1st Street N.E.
 
 Alternative 3A--Eastern Bypass
 Alternative 3B--Middle Bypass
 Alternative 4--postponement
 Alternative 5--no build
 
 6
 The section 4(f) evaluation concluded that there were no feasible and prudent alternatives to widening existing N.C. Highway 127 and that all means to minimize harm to the historic land had been considered. The United States Department of the Interior agreed with these conclusions. After the Federal Highway Administration (FHWA) approved the section 4(f) evaluation and the NCDOT gave design approval, the FHWA authorized right-of-way acquisitions.
 
 
 7
 Hickory Neighborhood filed suit seeking to enjoin the widening of N.C. Highway 127. It alleged that the Secretary of Transportation failed to comply with section 4(f) and with section 102 of the National Environmental Policy Act of 1969, 42 U.S.C.A. Sec. 4332 (West 1977) (requiring environmental impact statements in certain circumstances). The district court entered judgment denying Hickory Neighborhood's request for injunctive relief and dismissing its action. Hickory Neighborhood Defense League v. Burnley, 703 F.Supp. 1208 (W.D.N.C.1988). On appeal, we affirmed the decision of the district court that the Secretary had complied with section 102. Hickory Neighborhood I, 893 F.2d at 63. However, we vacated its decision that the Secretary had complied with section 4(f) and remanded for findings as to whether the Secretary determined that the alternatives to the widening of N.C. Highway 127 were not prudent in light of Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), and whether the facts before the Secretary supported his determination. Hickory Neighborhood I, 893 F.2d at 62. On remand, the district court specifically found that the Secretary determined that the alternatives to widening N.C. Highway 127 were not prudent and that the facts before the Secretary supported his decision to reject those alternatives. Hickory Neighborhood Defense League v. Skinner, 731 F.Supp. 207 (W.D.N.C.1990).
 
 II.
 
 8
 Section 4(f) prohibits the Secretary from approving a highway project that requires the use of a public park, recreation area, wildlife and waterfowl refuge, or land of an historic site of national, state, or local significance unless:
 
 
 9
 (1) there is no prudent and feasible alternative to using that land; and
 
 
 10
 (2) the program or project includes all possible planning to minimize harm to the park, recreation area, wildlife and waterfowl refuge, or historic site resulting from the use.
 
 
 11
 49 U.S.C.A. Sec. 303(c). In Overton Park the Supreme Court addressed review of a determination by the Secretary under section 4(f) noting that under section 706 of the Administrative Procedure Act, 5 U.S.C.A. Sec. 706 (West 1977), the reviewing court is "to engage in a substantial inquiry." Overton Park, 401 U.S. at 415, 91 S.Ct. at 823. The Court identified three factors for the reviewing court to consider. First, the court must determine whether the Secretary acted within the scope of his authority. Id. In making this determination, the court must find that the Secretary could have reasonably believed that there were no feasible and prudent alternatives. Id. at 416, 91 S.Ct. at 823. Second, the court must determine that the Secretary's decision was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Id. In deciding whether the decision was arbitrary or capricious, "the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Id. However, the reviewing court may not "substitute its judgment for that of the agency." Id. The final factor to consider is whether the Secretary followed all procedural requirements. Id. at 417, 91 S.Ct. at 824.
 
 III.
 
 12
 In Overton Park the Supreme Court indicated that section 4(f) land could not be used "unless there were truly unusual factors present in a particular case or the cost or community disruption resulting from alternative routes reached extraordinary magnitudes." Id. at 413, 91 S.Ct. at 822. The Court also noted that the Secretary could not approve the use of section 4(f) land unless the alternatives presented unique problems. Id. Hickory Neighborhood contends that in determining that the alternatives to widening N.C. Highway 127 were not prudent, the Secretary failed to correctly apply the Overton Park test. It points to our prior opinion in which we stated that "the administrative record does not indicate that the Secretary determined that there were unique problems or that the disruption associated with the alternatives reached extraordinary magnitudes." Hickory Neighborhood I, 893 F.2d at 61. However, the fact that the Secretary did not use the terms "unique" and "extraordinary" does not compel a finding that he did not comply with section 4(f) and the dictates of Overton Park. See Adler v. Lewis, 675 F.2d 1085, 1095 (9th Cir.1982) (use of "magic" terminology not required in section 4(f)(2) analysis). In Hickory Neighborhood I we did not hold that the Secretary failed to make the required analysis. Rather, we only found that in the absence of specific findings of unique problems, it was unclear whether the Secretary determined that such problems existed. Thus, we remanded to the district court to make a specific finding as to whether the Secretary complied with section 4(f) in light of Overton Park.
 
 
 13
 In assessing the Secretary's decision, we agree with rationale employed by the Seventh Circuit in Eagle Found., Inc. v. Dole, 813 F.2d 798 (7th Cir.1987). There, the court held that the Secretary must have a "strong" or "powerful" reason to use the section 4(f) land. Id. at 804. It concluded that the Supreme Court used the term "unique" in Overton Park for emphasis, not as a substitute for the statutory term "prudent". Id. at 804-05. It reasoned:
 
 
 14
 The Court made it pellucid that the reasons for using the protected land have to be good ones, pressing ones, well thought out; the Secretary must start with a strong presumption against turning chlorophyll cloverleafs in the parks into concrete ones; but even after starting from this presumption it may be prudent to use the Sec. 4(f) land. If the Secretary makes that hard decision, it must be respected.
 
 
 15
 Id. at 805.
 
 
 16
 On remand to the district court, the Secretary submitted his "Section 4(f) Policy Paper" containing guidelines for evaluating projects that use section 4(f) land. It provides that "[s]upporting information must demonstrate that ... alternatives result in unique problems." There is no indication in the record that the Secretary did not follow these guidelines. Additionally, the Secretary made several studies of the widening project. The district court found:
 
 
 17
 [T]he Secretary conducted several public hearings, circulated the draft environmental impact statement (DEIS) and the final environmental impact statement (FEIS) to several agencies, prepared mitigation measures, and engaged in engineering studies, traffic studies and traffic projections.
 
 
 18
 Hickory Neighborhood Defense League, 731 F.Supp. at 214. Although the Secretary's section 4(f) evaluation does not expressly indicate a finding of unique problems, the record amply supports the conclusion that the Secretary did determine that there were compelling reasons for rejecting the proposed alternatives as not prudent.
 
 
 19
 Having concluded that the Secretary determined that none of the alternatives were prudent in light of Overton Park, we must consider whether the factors relevant to this determination support his decision. We note initially that according to the "Section 4(f) Policy Paper," the Secretary believes that "it is not necessary to show that any single factor presents unique problems.... A cumulation of problems ... may be a sufficient reason to use a 4(f) property, but only if it creates truly unique problems." The Secretary's approach to determining whether an alternative is prudent is proper. As the Seventh Circuit has indicated, "[a] prudent judgment by an agency is one that takes into account everything important that matters. A cumulation of small problems may add up to a sufficient reason to use Sec. 4(f) lands." Eagle Found., 813 F.2d at 805; see Town of Fenton v. Dole, 636 F.Supp. 557, 567 (N.D.N.Y.), aff'd, 792 F.2d 44 (2d Cir.1986).
 
 
 20
 Alternatives 2A and 2B would use existing N.C. Highway 127 for northbound traffic paired with a parallel one-way street for southbound traffic. The section 4(f) evaluation noted that the use of these alternatives would limit access to two hospitals located in the Claremont Historic District. Both alternatives would require the use of two streets versus one in the Historic District and would route a major portion of highway traffic through a stable and quiet residential neighborhood rather than continuing to use N.C. Highway 127, an existing major artery through Hickory that is heavily traveled by commercial traffic. Additionally, the Secretary recognized that there would be "traffic operational difficulties due to inadequate cross streets between the northbound and southbound legs of the one-way pair." Furthermore, the Secretary found that "[a] particularly significant problem ... would occur in the vicinity of the southern terminus of the southbound leg of the one-way pair where two 90 degree turns would be required to reach existing NC 127." We cannot say that the district court erred in determining that these factors support the Secretary's determination that alternatives 2A and 2B were not prudent.[2]
 
 
 21
 Alternatives 3A and 3B both involve the construction of a new, four-lane urban highway east of N.C. Highway 127. The Secretary found that neither alternative would provide access to areas adjacent to N.C. Highway 127 and, according to trip destination data, would not significantly reduce the flow of traffic on N.C. Highway 127. Because these alternatives would not fulfill the transportation needs of the project, the Secretary properly rejected them as imprudent. See Ringsred v. Dole, 828 F.2d 1300, 1304 (8th Cir.1987) (an alternative that failed to meet one of the project's main objectives was not prudent). Similarly, alternatives 4 and 5, the postponement and no build alternatives, would not have alleviated the traffic problems associated with existing N.C. Highway 127. See Druid Hills Civic Ass'n, Inc. v. Federal Highway Admin., 772 F.2d 700, 715 (11th Cir.1985) (Secretary could reasonably reject no build alternative as not prudent because it failed to fulfill the need for a highway). Alternatives which will not solve or reduce existing traffic problems may properly be rejected by the Secretary as not prudent.
 
 IV.
 
 22
 Section 4(f) and the Supreme Court's decision in Overton Park require the Secretary to determine that there are strong and compelling reasons to reject alternatives to the use of section 4(f) land on the basis that the alternatives are not prudent. Here, the reasons given for rejecting the alternatives indicate that the Secretary made that determination and the relevant factors support his decision. While we do not conclude that the section 4(f) evaluation for this project is a model to be followed for future projects or that the administrative record was as complete as it might have been, applying "the rule of reason and practicality," we are persuaded that the Secretary complied with the mandates of section 4(f). See Coalition for Responsible Regional Dev. v. Coleman, 555 F.2d 398, 400 (4th Cir.1977).
 
 
 23
 AFFIRMED.
 
 
 
 [1]
 Two section 4(f) evaluations assessing the impact of the project on two historic structures were included in a Final Environmental Impact Statement prepared in 1977. In 1984, while the project remained dormant, the Claremont Historic District was nominated to the National Register of Historic Places. After the project was reactivated in 1986, a new section 4(f) evaluation was prepared to address the impact of the project on the entire historic district
 
 
 [2]
 In Hickory Neighborhood I we rejected the argument that the Secretary applied the wrong test because these alternatives constructively used section 4(f) land. Hickory Neighborhood I, 893 F.2d at 62. We held that even if the alternatives constituted constructive uses, the Secretary still could reject them if they were not prudent. Id