# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 95-2292

_____

| | | |
|---|---|---|
| City of Richfield, Minnesota,<br>a municipal corporation, | * <br> * <br> * | |
| Petitioner, | * <br> * | On Petition for Review<br>From Order of the |
| v. | * <br> * | Federal Aviation Administration. |
| Federal Aviation Administration;<br>Metropolitan Airports Commission, | * <br> * <br> * | |
| Respondents. | * | |

_____

Submitted: June 10, 1998
Filed: August 17, 1998

_____

Before BOWMAN, Chief Judge, BEAM, Circuit Judge, and GAITAN,[1] District Judge.

_____

BOWMAN, Chief Judge.

The Metropolitan Airports Commission (MAC), which operates the Minneapolis-St. Paul International Airport, proposes building a taxiway and altering flight patterns at the airport, for the purpose of shifting departing flights and the noise that comes with them from areas northwest of the airport to areas to the airport's southwest. As part of this project, MAC proposes implementing noise mitigation

_____

[1]The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri, sitting by designation.

measures, such as soundproofing homes, southwest of the airport. The Federal Aviation Administration approved this proposal on the basis of an environmental impact statement (EIS) that the FAA prepared with the Minnesota Department of Transportation. The city of Richfield, Minnesota, which lies immediately west of the airport, appeals the FAA's decision. Richfield contends that the EIS did not comply with 42 U.S.C. § 4332(2)(C) (1994), part of the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321 - 4370d. An EIS complies with NEPA so long as it takes a genuinely "hard look" at the environmental impact of a proposal. See Baltimore Gas & Elec. Co. v. Natural Resources Defense Council, Inc., 462 U.S. 87, 97 (1983) (citation to quoted case omitted).

First Richfield argues that the EIS did not adequately examine several factors that could prevent the project from shifting a significant number of departures to the airport's southwest. Richfield speculates that MAC might fund the noise mitigation program southwest of the airport with money that, were the project not implemented, MAC would instead spend on noise mitigation northwest of the airport. If MAC were to do so, and if Richfield is correct that the project in fact will shift very few flights to the southwest, then the project would spend millions of dollars on noise mitigation in the southwest, where most of the noise never will be, and would prevent the implementation of noise mitigation measures in the northwest, where most of the noise will remain.

We need not determine whether the EIS adequately considered the factors that Richfield cites, because we conclude that it did not need to do so. An EIS, true to its name, must examine the environmental impact of a proposal. See 42 U.S.C. § 4332(2)(C). Richfield, however, does not contend that the EIS failed to examine the project's impact. Instead Richfield contends that the EIS failed to examine the possibility that full implementation of the project will prove infeasible and that the project thus will have no significant impact at all but rather will leave the status quo essentially unchanged. Richfield cites no authority for the proposition that an EIS must

examine the ways in which a project might fail to affect the environment, and we reject this novel idea. It is axiomatic that, if a project will not significantly affect the environment, an agency need not prepare an EIS at all. See id. (EIS required for a project "significantly affecting the quality of the human environment"); Missouri Mining, Inc. v. Interstate Commerce Comm'n, 33 F.3d 980, 983 (8th Cir. 1994). Thus if Richfield is correct that this project will not shift a significant number of flights to the southwest, then the FAA need not have prepared any EIS, much less one that exhaustively examines all the reasons why the project will leave the environment unaltered. We conclude that the EIS did not need to examine the factors that Richfield believes will prevent the project from shifting a substantial number of flights to the airport's southwest.[2]

In a related argument, Richfield contends that the EIS should have examined the possibility of instituting noise mitigation measures northwest of the airport as an alternative to the proposed project. Under NEPA, an EIS must examine "reasonable alternatives" to a project. 40 C.F.R. § 1502.14(a) (1997) (regulation implementing NEPA). Similarly, the Airport and Airway Improvement Act requires consideration of any "possible and prudent alternative." 49 U.S.C. § 47106(c)(1)(C) (1994). An alternative is unreasonable if it does not fulfill the purpose of the project. See Citizens Against Burlington, Inc. v. Busey, 938 F.2d 190, 195 (D.C. Cir.), cert. denied, 502 U.S. 994 (1991); National Wildlife Fed'n v. Federal Energy Regulatory Comm'n, 912 F.2d 1471, 1484-85 (D.C. Cir. 1990). Richfield's suggested alternative, soundproofing

---

[2]In this case the FAA determined that the project in fact would shift a significant number of flights--up to 82 per day--to the airport's southwest. This determination, the analysis underlying which is discussed in Appendix C to the EIS, was based on substantial evidence and was not arbitrary or capricious, regardless of whether the FAA considered each of Richfield's particular points. Having made that determination, the FAA's duty in preparing the EIS was to examine the impact of the project on the environment, not to continue to debate the extent to which the project will do what it is intended to do.

homes northwest of the airport, would not fulfill the project's purpose of equitably redistributing noise. Unlike MAC's project, which the FAA has determined will actually shift noise, soundproofing homes would merely limit noise impact, and would have no effect whatsoever on noise outdoors or inside buildings other than the soundproofed homes. Thus Richfield's soundproofing alternative could not possibly fulfill the project's purpose, and it therefore is unreasonable for purposes of NEPA. Accordingly, the EIS did not need to consider it.

Finally Richfield argues that, for several reasons, the EIS was nothing more than a post-hoc rationalization of a decision the FAA already had made. We have considered all of Richfield's arguments on this point, and we find them to be without merit. The record shows that the FAA did not approve this project until the completion of an extensive review process that included ample opportunity for public comment. During this process, Richfield made numerous comments to the FAA, and the FAA carefully responded to Richfield's points. Richfield's arguments to this Court give us no persuasive reason for concluding that the EIS was a post-hoc justification of a foreordained decision, or that the EIS was anything but a serious and thorough consideration of the impact of this proposal on the environment.

We deny Richfield's petition for review and thus uphold the FAA's order approving the project.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.