# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 04-3546

_____

Arkansas Wildlife Federation, an      *
Arkansas Not-For-Profit Corporation;    *
The National Wildlife Federation, a     *
District of Columbia Not-For-Profit    *
Corporation; Arkansas Nature Alliance,   *
an Arkansas Not-For-Profit Corporation;*
The Hampton Landing Property Owners'*
Association, an Arkansas Not-For-      *
Profit Corporation; The White River    *
Conservancy, an Unincorporated       *
Association; The Augusta Improvement   *
Club, an Arkansas Not-For-Profit      *
Corporation; Kenneth L. Rose; E. W.    *
Ray; Charles Bowerman; Tommy M.     *
Castleberry, Sr.; Greg Rawn; Oliver M.   *
Eichelmann; Everett G. Oates; David    *
Carruth,                                 *
                                      *
          Plaintiffs-Appellants,     *
                                      *   Appeal from the United States
        v.                          *   District Court for the
                                      *   Western District of Arkansas.
United States Army Corps of         *
Engineers; Jack Scherer, Colonel,     *
District Engineer, Memphis District,    *
U.S. Army Corps of Engineers; Don T.   *
Riley, Brig. General, President,       *
Mississippi River Commission,       *
                                      *
          Defendants-Appellees.     *

_____

Submitted: October 10, 2005
Filed:  December 20, 2005
_____

Before ARNOLD, BOWMAN, and MURPHY, Circuit Judges.
_____

MURPHY, Circuit Judge.

Appellants brought this case against the United States Army Corps of Engineers alleging that the Corps had violated the National Environmental Policy Act (the Act) in connection with its Grand Prairie Area Demonstration Project (the Project) in East Central Arkansas and seeking declaratory and injunctive relief.  Both sides moved for summary judgment, and the district court[1] granted judgment to the Corps.  Appellants argue on their appeal that the cumulative impact analysis in the Final Environmental Assessment (FEA) was inadequate and that a Supplemental Environmental Impact Statement (SEIS) should have been prepared.  We affirm.

The Grand Prairie Region consists of over 500,000 acres located between Mississippi and Arkansas, and it is a major rice producing area.  This region relies on groundwater primarily from the Alluvial Aquifer and the Sparta Aquifer.  The Alluvial Aquifer provides ninety percent of the agricultural water used in the region, and it will be depleted by 2015 unless protective action is taken.  Depletion of the Alluvial Aquifer would cause severe economic hardship to the region; seventy seven percent of the irrigated crop would be lost, and rice production would decline by twenty three percent.  The Sparta Aquifer provides drinking water to local residences and supplies the water needs of local industry, but the suitability of its drinking water

_____

[1]The Honorable G. Thomas Eisele, United States District Court for the Western District of Arkansas.

will eventually be destroyed if it continues to be diverted for other uses as the Alluvial Aquifer is depleted.

The Grand Prairie Project was designed by the Corps to allow continued irrigation of the agricultural region while preserving the Alluvial Aquifer. The Corps issued a draft Environmental Impact Assessment (EIS) for public comment in early 1998. In July 1998 in response to the public comments, the Corps issued a draft General Reevaluation Report (GRR). The Final Environmental Impact Assessment (FEIS) was issued in 1999, and a Record of Decision (ROD) was signed in 2000. The FEIS and ROD selected "Alternative 7B" as the plan to be implemented. The Project has five components: (1) conservation of water by increasing agricultural efficiency of water usage, (2) reduction of water withdrawals from the Alluvial Aquifer so that there is no net loss of water and an end to drawing on the Sparta Aquifer for irrigation, (3) additional on farm reservoirs, (4) construction of a system that would pump excess water from the White River into the Grand Prairie region, and (5) various environmental improvement features. Since the signing of the ROD in 2000, twenty four percent ($71,000,000) of the total estimated cost of the Project ($319,000,000) has already been invested.

Arkansas Wildlife Federation (AWF)[2] filed suit in February, 2004, alleging that the Corps had failed to comply with the Act and seeking a preliminary and permanent injunction against the construction of the water import feature of the Project. AWF alleged that the Corps had not considered all reasonably feasible alternatives before adopting Alternative 7B, that the FEIS and ROD had not adequately considered the

---

[2] In addition to AWF, plaintiffs included the National Wildlife Federation, Arkansas Nature Alliance, the Hampton Landing Property Owners' Association, the White River Conservancy, the Augusta Improvement Club, Kenneth L. Rose, E. W. Ray, Charles Bowerman, Tommy M. Castleberry, Sr., Greg Rawn, Oliver M. Eichelmann, Everett G. Oates, and David Carruth. For ease of reference we adopt the usage of the parties in their briefs by referring to appellants collectively as AWF.

cumulative impacts of the proposed project, that the Corps had not adequately considered the direct and indirect impacts of the Project on the White River basin, and that the Corps improperly tiered[3] the minimum flow requirements of the Arkansas State Water Plan to the FEIS.

In March, 2004 the Corps issued for public comment a Draft Environmental Assessment (DEA) and a Finding of No Significant Impact (FONSI). The DEA included a list of proposed changes to the original plan, including (1) converting 29 miles of canals into pipelines, (2) providing water delivery by pipeline instead of existing streams, (3) use of 113 acres of borrow pits to store materials for constructing levees instead of hauling material from a farther distance, (4) construction of a separate building to house the control system, (5) widening of a canal, (6) alignment changes to canals and pipelines, (7) replacement of canal 3200 with multiple small pipelines, and (8) rehabilitation of existing reservoirs.

The Corps issued a Final Environmental Assessment (FEA) and a FONSI in July 2004 which approved the changes proposed in the DEA. The Corps determined that the changes adopted by the FEA were minor and would cause no significant unmitigated environmental impacts not already considered and that preparation of a SEIS was therefore not required. AWF amended its pleadings to challenge this finding and argued that a SEIS was required.

Both sides moved for summary judgment. The district court found that AWF's four year delay in challenging the FEIS, GRR, and ROD was unreasonable and that those claims were barred by laches. Alternatively, the district court held that the

_____

[3] The regulatory definition of tiering is as follows: "'Tiering' refers to the coverage of general matters in broader environmental impact statements with subsequent narrower statements or environmental analyses incorporating by reference the general discussions and concentrating solely on the issues specific to the statement subsequently prepared." 40 C.F.R. § 1508.28.

Corps had complied with the Act in connection with the FEIS, GRR, and ROD. The court additionally held that the Corps had adequately considered the cumulative impacts and the direct and indirect effects of the Project and that a SEIS had not been required following the changes adopted by the FEA. AWF appeals, arguing that the district court erred in finding no SEIS was required because the cumulative impact analysis by the Corps had been inadequate, substantial changes in the Project had been made, and significant new information had been discovered.

We review the district court's grant of summary judgment de novo. Nunley v. Department of Justice, 425 F.3d 1132, 1135 (8th Cir. 2005), but challenges to agency action are reviewed for whether it was arbitrary and capricious. 5 U.S.C. § 706(2)(A); Marsh v. Oregon Natural Resources Council, 490 U.S. 360, 374 (1989). We are not free to substitute our own judgment for that of the agency, but rather our role is to "ensure that the agency has adequately considered and disclosed the environmental impact of its actions." Mid-States Coalition for Progress v. Surface Trans. Bd., 345 F.3f 520, 534 (8th Cir. 2004)(quoting Baltimore Gas & Elec. Co. v. Natural Resources Defense Council, Inc., 462 U.S. 87, 98 (1983)).

I.

AWF contends that neither the FEIS nor the FEA adequately considered the cumulative impacts of past, present, and future action on the Project. In order to evaluate the FEA properly AWF argues we must first review the adequacy of the FEIS. The Corps responds that AWF's failure to appeal the district court's ruling on laches prevents it from now challenging the adequacy of the cumulative impact analysis in the FEIS. AWF contends that it is not challenging the FEIS directly, but rather arguing that the FEIS was not sufficiently comprehensive to permit its cumulative impact analysis to serve as the basis for that in the FEA. It asserts that it was therefore improper for the FEA to incorporate or be "tiered" upon the FEIS's cumulative impact analysis.

Although we have implied that any prior environmental impact statement (EIS) should be reviewed in determining whether an FEA is adequate, Newton County Wildlife Ass'n v. Rogers, 141 F.3d 803, 809 (8th Cir. 1998); Sierra Club v. U.S. Forest Service, 46 F.3d 835, 840 (8th Cir. 1995), there appears to be no case indicating that such a rule should apply to an FEIS when review of it is barred by laches. We need not address the question of whether laches bars consideration of this FEIS as it relates to the FEA, however, because we conclude that the cumulative impact analysis in both the FEIS and the FEA was adequate.

The Act requires that the agency proposing any action which may significantly affect the environment study and consider the environmental impacts of the proposed action, any unavoidable adverse environmental impacts, and the relationship between local short term uses of the environment and long-term productivity. 42 U.S.C. § 4332(C). This requires study of the direct, indirect, and cumulative impacts of the proposed action. 40 C.F.R. § 1508.25. Cumulative impacts, a focus of this appeal, are "the impact[s] on the environment which result[] from the incremental impact of the action when added to other past, present, and reasonably foreseeable future actions regardless of what agency (federal or non-federal) or person undertakes such action." 40 C.F.R. § 1508.7.

In complaining that the FEIS only lists additional projects, but does not analyze the cumulative environmental impacts, AWF relies on statements of the Environmental Protection Agency, the Fish and Wildlife Service, and other state and private organizations critical of the cumulative impact analysis by the Corps. Although other government agencies urged the Corps to wait for the completion of comprehensive studies of the White River basin by other entities, the Act only requires that the Corps consider and respond to the comments of other agencies. The Act does not require the Corps to wait for other agencies to complete their studies, Environmental Defense Fund, Inc. v. Hoffman, 566 F.2d 1060, 1068 (8th Cir. 1977), or to accept the input or suggestions of other agencies. Custer County Action

Association v. Garvey, 256 F.3d 1024, 1038 (10th Cir. 2001). It is up to the Corps to decide which comments of other agencies are of value to its projects, see Citizens Against Burlington, Inc. v. Busey, 938 F.2d 190, 201 (D.C. Cir. 1991), and we are hesitant to second guess its judgment.

A FEIS complies with the Act so long as the agency takes a "hard look" at the environmental impacts of the proposed action. City of Richfield, Minn. v. F.A.A., 152 F.3d 905, 906 (8th Cir. 1998). Here, the FEIS addressed the cumulative impact of the Project in connection with numerous other projects, including four existing projects, two pending projects, three unauthorized and unfunded projects, and five other actions affecting the White River. The FEIS also addressed the cumulative impact of potential irrigation projects which are not reasonably foreseeable under 40 C.F.R. § 1508.7. After our review of the record, we conclude that the Corps did not abuse its discretion in considering the cumulative impact in the FEIS.

AWF complains that the cumulative impact analysis in the FEA is inadequate, that it lacks the detailed information required by the Act, and that its findings are conclusory. AWF argues that the neither the "past actions" nor "present actions" section of the FEA adequately addresses the cumulative impact of the Project on the White River. Appellants' argument is premised on the incorrect assumption that the FEIS was inadequate. The Act encourages agencies to tier a subsequent Environmental Assessment (EA) to an EIS to save money and time by avoiding repetitive inquiries, 40 C.F.R. § 1502.20, and to help the agency "focus on issues which are ripe for decision and exclude from consideration issues already decided or not yet ripe." 40 C.F.R. § 1508.28.

An FEA will be ruled deficient only if it does not include a cumulative impact analysis or is not tiered to an EIS that contains such an analysis. See Native Ecosystems Council v. Dombeck, 304 F.3d 886, 895-96 (9th Cir. 2000). Although tiering an EA on an EIS will not always cure deficiencies in the cumulative impact

analysis in the EA, see Klamath-Siskiyou Wildlands Center v. Bureau of Land, 387 F.3d 989, 997-98 (9th Cir. 2004), an FEA cannot "be both concise and brief and provide detailed answers for every question." Sierra Club, 46 F.3d at 840. Because the FEA was properly tiered upon the FEIS and because the FEA provided an updated and adequate analysis of any new environmental impacts, we conclude that the cumulative impacts of the Project were properly considered in compliance with the Act.

Finally, AWF complains that both the FEIS and the FEA improperly deferred the study of the cumulative impacts of reasonably foreseeable action. An impact is reasonably foreseeable if it "is sufficiently likely to occur that a person of ordinary prudence would take it into account." United States v. Dubois, 102 F.3d 1273, 1287 (1st Cir. 1996). This determination is left to the Corps in the first instance. See Kern v. United States Bureau of Land Management, 284 F.3d 1064, 1069 (9th Cir. 2002). Both the FEIS and the FEA considered the "probable environmental consequences" of the proposed action, see Friends of the Boundary Waters Wilderness v. Dombeck, 164 F.3d 115, 1130 (8th Cir. 1999), and we see no reason to second guess their judgment. AWF's reliance upon our decision in Mid-States Coalition for Progress is misplaced since the agency in Mid-States stated that a particular outcome was reasonably foreseeable and that it would consider its impact, but then failed to do so. Mid-States, 345 F.3d at 550. Here, the Corps has not "completely ignored" the cumulative impact of future projects, but has considered the cumulative impact of projects in the region, some of which are not reasonably foreseeable. We conclude that the cumulative impact analysis in the FEIS and FEA complied with the Act.

II.

AWF complains that the Corps was required to prepare a SEIS, which is required if the agency "makes substantial changes in the proposed action that are relevant to environmental concerns" or "there are significant new circumstances or

information relevant to environmental concerns." 40 CFR § 1502.9(c). This section is interpreted to require a SEIS "if the changed plans or circumstances will affect the quality of the human environment in a significant manner...not already considered by the federal agency." Airport Impact Relief, Inc. v. Wykle, 192 F.3d 197, 204 (1st Cir. 1999); Marsh, 490 U.S. at 374.

AWF argues that the FEA contains at least six substantial changes not previously considered: an eighty two mile decrease in the miles of canals used, the one hundred thirteen mile increase in the miles of pipeline used, the reduction in the use of natural streams in favor of pipelines, doubling the acres of permanent upland hardwood impacts, the construction of borrow pits to store machinery, and widening Canal 1000 to create a one hundred acre reservoir. The Corps responds that the changes are not substantial because they will not have a significant impact on the environment which has not already been considered. In addition, it asserts that the changes will not significantly alter the areas served, the costs, the project purposes, or the White River basin.

A change is substantial if it presents a "seriously different picture of the environmental impact." South Trenton Residents Against 29 v. Fed. Highway Admin., 176 F.3d 658, 663 (3d Cir. 1999); see also Hickory Neighborhood Defense League v. Skinner, 893 F.2d 58, 63 (4th Cir. 1990); Sierra Club v. Froehlke, 816 F.2d 205, 210 (5th Cir. 1987). To determine whether a change is substantial we look at the possible environmental consequences not previously considered. Marsh, 490 U.S. at 374.

The record demonstrates that AWF has overstated the overall impact of the changes on the environment. The concern over replacing canals with pipelines is misplaced because most of the canals in the original plan were not functional and would require substantial excavation work. The draft EA also explained that pipelines were less damaging to existing habitats than canals and would have fewer

impacts associated with construction. While the reduction of natural stream use will reduce some of the fisheries benefits initially heralded by the Corps, it will be very minor (only 99 of 8,560 fish habitats will be lost) and will be balanced by the reduction of potential adverse impacts to riparian vegetation and zebra mussel introductions. Moreover, the reduction of the use of natural streams for water delivery resulted from public comments that criticized the use of natural streams in the initial proposal. The proposed changes also reduce the acres of upland hardwood that are temporarily and permanently affected by the Project, instead of increasing the impact on them. The excavation for the borrow pits does not change the volume of soil required for the project, but only where that soil comes from. Use of the pits substantially reduces hauling costs and will not result in the loss of wildlife habitat. Finally, nothing in the record indicates that the creation of Canal 1000 would adversely impact the region.

The Corps adequately considered the environmental impact of the proposed changes and reasonably concluded that they were not significant and that any environmental impact appears to be positive rather than negative. Although we do not hold that a reduction in the environmental impact can never trigger the requirement to prepare a SEIS, "a reduction in the environmental impact is less likely to be considered a substantial change relevant to environmental concerns than would be an increase in the environmental impact." Friends of the Bow v. Thompson, 124 F.3d 1210, 1218-19 (10th Cir. 1997).

AWF's reliance on DuBois v. United States Dep't of Agriculture, 102 F.3d 1273 (1st Cir. 1996) is unpersuasive. In DuBois an agency adopted an alternative that had never before been considered nor disseminated for public comment, but appeared for the first time in the FEIS. DuBois, 102 F.3d at 1292. The First Circuit held that under these circumstances the agency was required to submit a SEIS. In contrast, the proposed changes in the Project were presented for public comment and the FEA considered the potential environmental implications of these changes.

Furthermore, unlike DuBois, the change in the Project is one of design, not the selection of a completely new and unconsidered alternative. Because determining whether an impact is substantial is "a classic example of a factual dispute the resolution of which implicates substantial agency expertise," we defer to the Corps' informed discretion. Marsh, 490 U.S. at 376.

AWF also argues that new information indicates that water removal from the White River will be greater than initially planned and that this requires preparation of a SEIS. Appellants complain that the FEA contains references to a number of projects that were either not mentioned in the FEIS or whose cumulative impacts were not adequately considered in the FEIS. The Corps responds that whether the new information is significant enough to require a SEIS is a decision that should be left to the informed discretion of the agency. The Corps states that while there is new information in the FEA, it merely updates material already contained in the FEIS and does not alter the overall picture of the environment. Although the FEA mentions a number of new irrigation projects not considered in the FEIS, those projects are so new as to be speculative and are thus not significant.

When new information is presented, the agency is obligated to consider and evaluate it and to make a reasoned decision as to whether it shows that any proposed action will affect the environment in a significant manner not already considered. Marsh, 490 U.S. at 374. Our role is limited to verifying that the agency considered the relevant factors and did not make a clear error in judgment. Id. at 378. An agency does not have to provide a SEIS every time new information comes to light; "to require otherwise would render agency decisionmaking intractable, always awaiting updated information only to find the new information outdated by the time a decision is made." Marsh, 490 U.S. at 374. Here, many of the projects briefly discussed in the FEA were discussed in more detail in the earlier FEIS upon which the FEA was properly tiered. Those projects mentioned which were new were very early in their

planning. We conclude that the Corps did not act arbitrarily or capriciously in refusing to prepare a SEIS based on new information.

III.

This Project has proceeded through various stages over a period of years with much involvement of interested parties. As has been pointed out, "the NEPA process involves an almost endless series of judgment calls[,] .... [t]he line-drawing decisions necessitated by this fact of life are vested in the agencies, not the courts," Coalition on Sensible Transportation, Inc. v. Dole, 826 F.2d 60, 66 (D.C. Cir. 1987). After studying the record, we conclude that AWF has not shown that the Corps acted in an arbitrary or capricious manner. The judgment of the district court is therefore affirmed.

_____